IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNETH COUNCE,

    Plaintiff,

v.                                                                       Case No. 13-3199-JTM

RYAN WOLTING, et al.,

    Defendants.

**MEMORANDUM AND OMNIBUS ORDER**

On September 9, 2015, this court ordered plaintiff to submit a final amended complaint by October 16, 2015. (Dkt. 45). On October 9, 2015, plaintiff filed a motion requesting an additional ninety days to perform said act (Dkt. 46) and a motion for reconsideration (Dkt. 47) of the court's September 9, 2014 and September 9, 2015 orders (Dkts. 30 and 45, respectively). He then filed a Final Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 on October 22, 2015 (Dkt. 48, hereafter the "Final Amended Complaint"), and a motion to appoint counsel on November 24, 2015 (Dkt. 49). The court addresses each in the order filed.

**I.**      **Ninety Day Motion for Extension of Time to Perform An Act (Dkt. 46)**

Because plaintiff filed this motion before the deadline expired and he filed the required pleading within the requested extension period, the court grants the motion and considers the Final Amended Complaint timely filed.

**II.**      **Motion for Reconsideration [Pursuant to Rule 7.3 and Fed. R. Civ. P. 59(e) or 60] (Dkt. 47)**

This motion seeks reconsideration of the court's res judicata concern and its denial of appointment of counsel in the underlying orders. In the September 2014 Order, the court found

no compelling reason to appoint counsel "[b]ecause it appear[ed] the claims in this matter have been adjudicated in [] state court." (Dkt. 30 at 5). The court noted that from the materials supplied, it appeared that plaintiff had raised the same claims in the District Court of Ellsworth County, Kansas, in *Counce v. Wolting, et al.*, Case No. 2013-CV-59, which was dismissed on November 19, 2013, as "a frivolous lawsuit based on false allegations." (*Id.* at 2). In the September 2015 Order, the court concluded that the present record does not support the appointment of counsel at the time because: 1) it appears that many, if not all, of the claims have been presented to another court and rejected as legally frivolous; 2) plaintiff appears capable of presenting the factual bases of his claims; and 3) the legal issues do not appear to be unusually complex. (Dkt. 45 at 3).

The court considers a motion to reconsider as either a motion to alter or amend filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure or a motion for relief from judgment filed pursuant to Rule 60(b), depending on its filing date. Because petitioner filed this motion more than 28 days from both of the underlying orders, the court treats it as filed pursuant to Rule 60(b). That rule permits a district court to vacate or modify its judgment on any of the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003) (quotations omitted).

Plaintiff argues that because he is imprisoned in Texas, "[he] lacks access to any State of Kansas laws or legal materials . . .[,]" rendering him "illiterate" or "helpless." (Dkt. 47 at 4, 7). He also claims that injuries from the October 2013 incident diminished his ability to represent himself. Finally, he attaches an order issued by the Ellsworth District Court on January 7, 2015, which he claims is new evidence that shows the civil judge lacked jurisdiction to dismiss Case No. 2013-CV-59. (*Id.* at 6).[1]

Plaintiff's arguments fail to show a basis for relief under Rule 60(b). As to the court's res judicata concerns, the court finds there is nothing to reconsider as the court made no definitive ruling on res judicata. Instead, the court simply noted that res judicata may bar this matter and gave plaintiff an opportunity to explain why res judicata does not apply. (Dkt. 45 at 1, "the court defers ruling on . . . res judicata…"). The court will consider this motion (Dkt.47), as well as the state court's January 5, 2015 Order, as part of plaintiff's response to the court's order to show why this case should not be barred by res judicata in the discussion below.

As to the denial of appointment of counsel, the court finds unpersuasive plaintiff's argument that lack of access to Kansas law renders him helpless or illiterate. Plaintiff is literate. Even if he was illiterate, courts have consistently held that a prisoner's illiteracy is insufficient to merit appointment of counsel. *See Finley v. Kerby*, 996 F.2d 310 (10th Cir. 1993) (affirming denial of appointment of counsel due to illiteracy); *Green v. United States*, Case No. 11-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013), *aff'd* (Oct. 25, 2013) (denying request for appointed counsel due to illiteracy). *See also Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir.

---

[1] While the January 7, 2015 Order constitutes new evidence as to the September 2014 Order, it was available prior to the issuance of the September 2015 Order. Thus, the January 7, 2015 Order is not newly discovered evidence under Rule 60(b). Moreover, this order was filed in the criminal case, *State of Kansas v. Counce*, Case No. 2013 CR 118 (District Court of Ellsworth County, Kansas), not the state civil case (Case No. 2013-CV-59).

2002), *cert. denied*, 538 U.S. 984 (2003) (inmate's lack of legal training, poor education and even illiteracy does not provide reason to toll the applicable statute of limitations for filing a habeas corpus petition under 28 U.S.C. § 2254); *Yang v. Archuleta*, 525 F.3d 925, 929-30 n.7 (10th Cir. 2008) (collection of cases holding learning disability, illiteracy, and lack of familiarity with English language do not merit equitable tolling). Moreover, because a pro se litigant is not required to present any legal authority for his claims, plaintiff's access to Kansas legal materials is not mandated or necessary. Finally, because plaintiff's pleadings are coherent, it does not appear his injuries have affected his abilities to present the facts and his claims. For these reasons, the court declines to reconsider its denial of appointment of counsel.

### III.    The Final Amended Complaint (Dkt. 48)

Because Mr Counce is a prisoner, federal statute requires this court to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A (a) and (b). Having screened all materials filed, the court finds that portions of the Final Amended Complaint must be dismissed. The court, however, addresses several preliminary matters first.

#### A. Proper Designation of Defendants

Pro se litigants are required to adhere to the Federal Rules of Civil Procedure. Rule 10(a) requires that all parties be named in the caption of the complaint. In all other pleadings, after naming the first party on each side, the caption may refer generally to other parties (*i.e.*, "et al."). Fed. R Civ. P. 10(a). This rule is important because a plaintiff may choose to seek recovery against some people he believes are responsible for his injury and not others. Notice and service problems often arise if a plaintiff fails to adhere to this rule.

In the Final Amended Complaint's caption, plaintiff named defendants as follows: "Ryan M. Wolting, et al." (Dkt. 48 at 1). In the defendant's section of the complaint, where plaintiff is to provide information on each defendant, he listed as defendants: Ryan M. Wolting, Eric D. Sauer, Mark A. Bruce, Tracy L. Ploutz, John Doe 1, John Doe 2, John Doe 3, John Doe 4, Dr. Shawn (last name unknown), Kirk E. Simone, Darian P. Dernovish, David Chamberlain, and Theresa Staudinger. (*Id*., ¶¶ 2-3 at 1-2D). Although plaintiff did not list KHP Trooper Arnold (first name unknown) in the defendants' section, Count 2 clearly indicates that Arnold is an intended defendant. (*Id.* at 3). While plaintiff failed to comply with Rule 10(a), the court construes the complaint as naming all the above-noted individuals as defendants.[2] If this construction by the court of the named defendants is incorrect, plaintiff may present an amended complaint for the sole purpose of complying with Rule 10(a) by naming each intended defendant in the caption.

**B. Res judicata**

After comparing the Final Amended Complaint with the state complaints and further review of the record, the court believes that the state court's dismissal of *Counce v. Wolting, et al.*, Case No. 2013-CV-59 (the "State Action"), does not bar this action. Res judicata requires the satisfaction of four elements: 1) the prior suit must have ended with a judgment on the merits; 2) the parties must be identical or in privity; 3) the suit must be based on the same cause of action; and 4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). In the State Action, plaintiff asserted two claims: 1) failure to arraign him within forty-eight hours

---

[2] *Barsten v. Department of Interior*, 896 F.2d 422, 423 (9th Cir.1990) (proper defendant is named if allegations in body of complaint make it clear the party is intended as defendant); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1321 (1990) (defective caption is merely formal error and should never be viewed as fatal defect).

5

after an arrest without a warrant, and 2) retaliatory seizure of his money to vex prosecution of his civil claim. In this action, plaintiff asserts sixteen[3] claims, which include excessive force, deliberate indifference to medical needs, failure to protect, illegal segregation, denial of access to courts, illegal seizure of his money, and denial of due process. As with the claims, plaintiff names more defendants than in the State Action.[4] Thus, the parties and the claims arguably are not identical. Even if they were identical, as noted above, federal courts will not apply res judicata if the plaintiff did not have a full and fair opportunity to litigate the claims in state court. *See Scroggins v. Kansas Dep't of Human Resources, Div. of CETA*, 802 F.2d 1289, 1291 (10th Cir. 1986).

Plaintiff filed the State Action on November 18, 2013. The state court summarily dismissed the State Action sua sponte the following day. The Order of Dismissal in its entirety states:

> Now on this 19th day of November, 2013, the Court Sua Sponte dismisses this case.
> The Court has examined the criminal case filed and the Petitioner had a first appearance October 29, 2013. The Court appointed counsel in the criminal case and the trial is set for November 20, 2013. This is a frivolous lawsuit based on false allegations.
> IT IS BY THE COURT, SO ORDERED.[5]

It appears that the state court neither held a hearing nor gave plaintiff an opportunity to amend his complaint or present argument. Because it is not clear whether plaintiff had a full and fair opportunity to present his case, the court declines to dismiss this action based on res judicata at this time.

---

[3] Although the Amended Complaint references Counts 1-17, plaintiff skipped Count 9. Thus, there are sixteen counts.

[4] Wolting, Arnold, Ploutz, Chamberlain, county attorney Shepack, and Joe Does 1-5 were the named defendants in the State Action.

[5] Dkt. 18-1 at 48.

## C. Allegations and Claims

The court summarizes the following facts from plaintiff's allegations and exhibits, and accepts them as true for purposes of initial screening. On October 22, 2013, at the milepost 224 rest area on Interstate 70, KHP Trooper Wolting tasered plaintiff in the groin area and assaulted him for "15 to 25 minutes or more," resulting in a broken left jaw, swollen left eye, and injuries to his shoulders, knees, and right wrist (Dkt. 48 at 3-A-B).[6] Civilians John Doe 1 and 2 assisted Trooper Wolting by holding plaintiff down. Doe 1 also allegedly struck plaintiff on the left side of his jaw with an unknown weapon, sat on him, verbally assaulted him, called him the "N" word, and choked him. As to Doe 2, although he was not as enthusiastic as Doe 1, he failed to intervene when Doe 1 choked and sat on plaintiff.

Trooper Wolting handcuffed plaintiff and refused plaintiff's request to remove the right handcuff, even though it was cutting deeper into the gash on his right wrist. He also denied the EMT's request to examine plaintiff's shoulders and right wrist, telling them to "stay away from the handcuff." Plaintiff claims he only received superficial swabbing by EMS at milepost 224. (*Id*. at 4-B).

Trooper Arnold arrived on scene and drove plaintiff to the Ellsworth County Jail ("ECJ"). He too refused to remove the right handcuff or loosen the left handcuff despite plaintiff's repeated requests during the 25 or 35- minute ride to the jail.

Plaintiff alleges that upon his arrival at the jail, his physical injuries and distress were obvious, yet Trooper Wolting, Trooper Arnold, Sheriff Ploutz, Deputy Chamberlain, Deputy Doe 3, and Deputy Doe 4, all with deliberate indifference, refused to take him to the hospital or give

---

[6] Plaintiff provided no facts regarding the circumstances that led to his stop and arrest. Plaintiff's recitation of the facts began with the physical attack against him. The court notes that plaintiff did not allege the arrest was unlawful.

7

him any meaningful treatment, including a sip of water. Plaintiff claims that his severe pain went untreated during his interrogation, which was more than two hours long. (4-A-B).

The state charged plaintiff with battery of a law enforcement officer (LEO) in violation of Kan. Stat. Ann. § 21-5413 on October 23, 2013. Plaintiff remained at ECJ while that charge was pending. On November 20, 2013, plaintiff pled guilty to said charge. Plaintiff filed a motion to withdraw his plea and a notice of appeal on November 26, 2013. The clerk's office docketed the notice, but failed to forward it to the chief district judge for assignment. ECJ remanded custody of plaintiff to the State of Texas on December 2, 2013. The chief district judge became aware of the notice of appeal sometime after October 24, 2014, and ordered the County Attorney to clarify all that had transpired in the case. On January 7, 2015, the state district court informed the prosecution that if the prosecution failed to arrange for the return of Mr. Counce from Texas custody to stand trial within 180 days, then the matter would be dismissed with prejudice. *Id.* at 4. On September 24, 2015, the state court dismissed the criminal case with prejudice. The county attorney has appealed that dismissal, arguing that plaintiff bore the burden under the Interstate Agreement on Detainers to initiate his return to Kansas for a trial de novo. That appeal appears to be pending.

During his 40-day incarceration at ECJ, plaintiff claims that Sheriff Ploutz segregated him and placed him in solitary confinement the entire time with no explanation. He also claims that Sheriff Ploutz did not allow him to make even one phone call, and denied him access to legal materials and stamps. Plaintiff maintains that he was never provided with proper medical treatment because Sheriff Ploutz either rebuffed or ignored his requests for non-over-the-counter pain medication and treatment at a hospital.

8

On October 29, 2013, Sheriff Ploutz told plaintiff that he had turned over plaintiff's cash to the KHP on Friday, October 25, 2013. Plaintiff alleges that Sheriff Ploutz and Trooper Wolting had intended to steal his money, but Sheriff Ploutz became nervous and confessed that he gave it to Trooper Wolting, without a court order or a receipt.

On November 8 or 9, 2013, plaintiff requested to be taken to the hospital for x-rays or an examination because the left side of his face was so swollen that he could not see out of his left eye. Plaintiff told the jail doctor, Dr. Shawn (last name unknown), that it felt like his left-cheekbone was broken. Dr. Shawn diagnosed it as a tooth infection and ordered antibiotics. Plaintiff saw Dr. Shawn twice and each time, he would tell him of his severe pain and that his upper-left jaw/cheekbone was fractured. Dr. Shawn disagreed, adamantly stating there were no broken bones.

Since his arrest, plaintiff sent numerous letters and requests to the KHP to file complaints against Troopers Wolting and Arnold and for the return of his property (cash and minivan). Plaintiff alleged that Captain Eric D. Sauer, Commander of Troop N, failed to investigate his claims against Trooper Wolting and instead, covered-up the incident by considering the matter closed after replying "the facts of the investigation did not substantiate your claims." (Dkt 48 at 2-L). Captain Sauer also allegedly ignored plaintiff's request to send him a form so that he could file a complaint against Trooper Arnold. Plaintiff alleged that Major Mark A. Bruce, KHP's interim superintendent, continued the cover-up conspiracy by stating that the "original complaint has been completed as of March 31, 2014," that "the incident was investigated to the fullest extent possible," and threatening that "making false statements that an officer has committed a crime or committed misconduct in the [performance of such officer's duties,] may constitute a

violation of Kansas State Statute 21-5904 (Interference with Law Enforcement)." (Dkt. 48 at 2-M).

Plaintiff also wrote several letters to Darian P. Dernovish, KHP's legal counsel, and Kirk E. Simone, KHP's Asset Forfeiture Coordinator, to request the return of his money and minivan. He claimed that they ignored his complaints and never returned his cash. (Dkt. 46 at 38). Plaintiff alleged that their requirement that he fill out IRS Form W-9 request was unreasonable (because he could not recall his tax identification number) and tantamount to covering up the theft of his money. (Dkt. 48 at 2-O). In a letter dated September 11, 2014, Simone advised plaintiff that because the social security number listed on his Form W-9 was not recognized as belonging to him, and pursuant to Kan. Stat. Ann. § 22-2512, the money was transferred in plaintiff's name to the Unclaimed Property Division of the State of Kansas. Plaintiff claimed that $ 8,400 was turned over to the state treasurer's office and that KHP still owed him $ 520. (Dkt. 46 at 38).

As to his minivan and its contents, plaintiff alleged that everyone gave him the run-around. As a result, he incurred storage fees that exceeded the value of his vehicle. In a letter dated June 18, 2014, Simone informed plaintiff that the KHP did not have custody of his vehicle and that he should direct his inquiries to Randy's Body Shop. Theresa Staudinger, counsel for Randy's Body Shop, wrote plaintiff several letters, advising him that as of September 11, 2014, the total amount due to Randy's Body Shop was $ 8,242.00, the minivan was being held subject to satisfaction of the lien, and storage fees accrued until the total amount due was paid. On October 2, 2015, Staudinger wrote that a title inquiry revealed that the registered owner was Naim Y. Nagib and any future inquiries must be by Nagib.

10

In Count 1 of the Final Amended Complaint, plaintiff alleged that Trooper Wolting used excessive force against him during the arrest. In Count 2, plaintiff alleged, among other things, that Trooper Arnold used excessive force when he refused to remove or loosen the handcuffs on plaintiff during the ride to the jail. In Counts 2, 3, 4, and 11, plaintiff alleged that defendants Arnold, Wolting, Ploutz, Chamberlain, Deputy Doe 3 and 4, all with deliberate indifference, denied him medical care. In Counts 5 and 6, plaintiff alleged John Doe 1 and 2 used excessive force against him when they assisted Trooper Wolting with plaintiff's arrest. In Count 7, plaintiff claimed Trooper Wolting evinced deliberate indifference when he failed to protect him from Doe 1's physical assault, namely sitting on him and choking him. In Count 8, plaintiff claimed Deputy Ploutz violated his rights to freedom of association and access to the courts by denying him: stamps, use of the law library, legal forms, notarial services, telephone privileges, visitation, and a grievance procedure. Plaintiff skipped Count 9. In Count 10, plaintiff claimed Deputy Ploutz violated his right to equal protection of the law and freedom of discrimination by segregating him in a one-man solitary confinement cell without a hearing or a chance to object. In Counts 12 and 13, plaintiff claimed that Trooper Wolting and Deputy Ploutz deprived him of property without due process of law when Deputy Ploutz handed over $ 8,920 to Trooper Wolting on October 25, 2013, without a court order. In Count 14, plaintiff alleged that Dr. Shawn denied him adequate medical care. In Count 15, plaintiff claimed that defendants Bruce and Sauer violated his right to petition the government for redress of his grievances. In Count 16, plaintiff claimed the Executive Office for the United States Attorney violated the Freedom of Information Act by withholding data and photographs and documents. In Count 17, plaintiff claimed that defendants Darian Dernovish, Kirk Simone, and Theresa Staudinger violated his right to petition and deprived him of his property without due process of law.

1.  **Excessive Force by John Doe 1 and 2 (Counts 5 and 6)**

Counts 5 and 6 are excessive force claims against John Doe 1 and 2, respectively. Plaintiff describes Doe 1 as "the Civilian W/Beard" (Dkt. 48 at 4-C) and Doe 2 as "the bearded civilian's friend" (*Id.* at 4-E). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Plaintiff neither alleged that Doe 1 and 2 injured him on orders from a state actor or that they conspired with a state actor to use excessive force against him. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir.1990) (conspiracy provides the requisite color of state law). The court finds from the face of the complaint that plaintiff fails to state a cause of action under § 1983 against Joe Doe 1 and 2 because the allegations show they are not state actors and they acted on their own. *Mickle v. Ahmed*, 444 F.Supp.2d 601 (D. S.C. 2006) (defendants were acting as private citizens when they assisted officer and restrained arrestee; § 1983 claim does not lie against private citizens). Accordingly, the court dismisses Counts 5 and 6.

2.  **Denial of Access to Courts (Count 8)**

Count 8 claims that plaintiff was denied access to the courts. Plaintiff's alleged actual injury is based on his attempt to file this § 1983 suit on October 26, 2013, being thwarted by the denial of his requests for stamps. The court finds this claim meritless given that plaintiff managed to file this suit in federal court on November 12, 2013. In order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted). An

inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). In this case, the delay in filing had no detrimental effect on plaintiff's § 1983 claims. Additionally, plaintiff provided no dates or details to support his claims regarding telephone usage, visitation, and the lack of a grievance process. Nor did he allege facts personally linking Deputy Ploutz to a particular incident regarding these claims. For these reasons, plaintiff has failed to state a claim for denial of access to courts. Accordingly, the court dismisses Count 8.

### 3. Wrongful Segregation Classification (Count 10)

Count 10 is a segregation/classification claim. An inmate, however, does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-222 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne*, 427 U.S. at 243; *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). The custody classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. Thus, an inmate's placement in administrative segregation is a classification matter that is purely within the discretion of prison officials, and generally not reviewable in federal court. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Segregation is not limited to instances of punishment, but may be imposed for administrative purposes. Administrative segregation implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Plaintiff has not sufficiently described such extreme

13

conditions or restrictions, and adverse impacts to show they were atypical and significant deprivations warranting due process protections. Plaintiff's claim that he was segregated without a hearing, standing alone, does not state a federal constitutional violation because he is not entitled to a particular degree of liberty in prison. *Id*; *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (There is no right independently protected under the Due Process Clause to remain in the general prison population.); *Miramontes v. Chief*, 86 Fed.Appx. 325 (9th Cir. 2004) (pretrial detainee placed in segregated confinement on basis of his criminal background, confinement history and gang affiliation did not have substantive due process right not to be placed in segregation). For these reasons, the court dismisses Count 10.

### 4. Inadequate Medical Care by Dr. Shawn (Count 14)

Count 14 is a denial of medical care claim against Dr. Shawn, the jail doctor. Plaintiff claimed that Dr. Shawn "denied [him] adequate medical care by failing to perform proper medical examinations[,] . . . fail[ed] to refer him for appropriate diagnostic testing[,] and [failed to provide] pain medication for obvious serious injuries in violation of the Eighth Amendment . . . ." (Dkt. 48 at 4-T). Plaintiff's supporting facts indicate that despite his four requests for examination at a hospital and for x-rays of his face, shoulders, back and knees, he only met with Dr. Shawn twice, who diagnosed him with a tooth infection and prescribed him antibiotics and aspirin.

A prisoner's right is to medical care, not to the type or scope of medical care he personally desires. A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual treatment. *See Estelle*, 429 U.S. at 106-07; *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir.

1968) (A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.). Even if plaintiff were to prove that Dr. Shawn's medical judgment was unsound or that the alternative treatment he received was ineffective, these allegations amount to no more than a claim of negligence. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir.1997) (citing *Estelle*, 429 U.S. at 106). The court concludes that Mr. Counce has failed to state an Eighth Amendment claim against Dr. Shawn. Accordingly, the court dismisses Count 14.

### 5. Violation of the Freedom of Information and Privacy Act (FOIPA) (Count 16)

Count 16 alleges that "The Executive Office for the United [States] Attorneys violated . . . [the FOIPA] by withholding data and photographs and documents unrelated to exemptions pursuant to sections 552(a)(j)(2) and 552(b)(7)(E), ect." (Dkt. 48 at 4-V-2). Because the Executive Office is a federal agency, it does not act under color of state law. Accordingly, the court dismisses Count 16.

In sum, the court dismisses Counts 5, 6, 8, 10, 14, and 16. As to the remaining claims, the court concludes a response is necessary to ensure the proper resolution of those claims.

### IV.    Motion for Appointment of Counsel (Dkt. 49)

This is plaintiff's third motion for appointment of counsel in this case. In this motion, plaintiff essentially asserts that his prisoner status, limited legal knowledge, and the complex nature of this case warrant appointment of counsel. (Dkt. 49). Because this motion presents no

new facts which the court has not previously considered in deciding whether to appoint counsel, the court denies the motion. It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

**IT IS THEREFORE ORDERED** that plaintiff's motion for extension (Dkt. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (Dkt. 47) and motion to appoint counsel (Dkt. 49) are **DENIED**.

**IT IS FURTHER ORDERED** that Counts 5, 6, 8, 10, 14, 16 are dismissed.

**IT IS FURTHER ORDERED** that defendants John Doe 1, John Doe 2, and Dr. Shawn are dismissed from this case.

**IT IS FURTHER ORDERED** that the clerk of the court shall prepare summons and waiver of service forms pursuant to Rule 4(d) of the Federal Rules of Procedure, to be served on KHP Trooper Ryan M. Wolting, KHP Trooper (fnu) Arnold, KHP Captain Eric D. Sauer, KHP Major Mark A. Bruce, Sheriff Tracy L. Ploutz, Deputy David Chamberlain, Deputy John Doe 3, Deputy John Doe 4, Kirk E. Simone, Darian P. Dernovish, and Theresa Staudinger. A United States Marshal or a Deputy Marshal shall serve the same at no cost to plaintiff absent a finding by the court that plaintiff is able to pay such costs.

**IT IS SO ORDERED** this 4th day of May 2016.

s/ J. Thomas Marten
J. THOMAS MARTEN, Judge