# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENNETH COUNCE,

       Plaintiff,

v.

                                                Case No. 13-3199-JTM

RYAN WOLTING, ET AL.,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiff Kenneth Counce brings this *pro se* civil rights action under 42 U.S.C. § 1983, alleging various claims, including excessive force during his October 2013 arrest, deliberate indifference in the denial of medical care, and deprivation of property without due process. Defendants Ryan Wolting, [fnu] Arnold, Eric Sauer, Mark Bruce, Kirk Simone, and Darian Dernovish, all current or former employees of the Kansas Highway Patrol (collectively "KHP Defendants"), seek dismissal of all claims against them on various grounds (Dkt. 99).[1] In addition to filing a response opposing the motion (Dkt. 115), plaintiff filed a motion requesting the court direct KHP's records custodian to furnish Arnold's first and middle name (Dkt. 116) and a Motion for Leave to File Supplemental Citations (Dkt. 120). For the reasons stated below, the court partially grants the motion to dismiss, grants the motion for Arnold's first and middle name, and denies the motion for leave to file the supplement.

## I.     Factual Background

This court previously summarized plaintiff's factual allegations in the screening order (Dkt. 51) and will repeat only those necessary for resolution of these motions. On October 22,

---

[1] Plaintiff also brought similar claims against the Ellsworth County Sheriff, as wells as several deputies from the Ellsworth County Sheriff's Office (SO). The SO Defendants have not filed a motion to dismiss as of the date of this order.

2013, at the milepost 224 rest area on Interstate 70, KHP Trooper Wolting tasered plaintiff in the groin area and assaulted him for "15 to 25 minutes or more," resulting in a broken left jaw, swollen left eye, and injuries to his shoulders, knees, and right wrist (Dkt. 48 at 3-A-B).[2] Civilians John Doe 1 and 2 assisted Trooper Wolting by holding plaintiff down. Doe 1 also allegedly struck plaintiff on the left side of his jaw with an unknown weapon, sat on him, verbally assaulted him, called him the "N" word, and choked him. As to Doe 2, although he was not as enthusiastic as Doe 1, he failed to intervene when Doe 1 choked and sat on plaintiff.

Trooper Wolting handcuffed plaintiff and refused plaintiff's request to remove the right handcuff, even though it was cutting deeper into the gash on his right wrist. He also denied the EMT's request to examine plaintiff's shoulders and right wrist, telling them to "stay away from the handcuff." Plaintiff claims he only received superficial swabbing by EMS at milepost 224. (*Id*. at 4-B).

Trooper Arnold arrived on scene and drove plaintiff to the Ellsworth County Jail ("ECJ"). He too refused to remove the right handcuff or loosen the left handcuff despite plaintiff's repeated requests during the 25 or 35- minute ride to the jail.

Plaintiff alleges that upon his arrival at the jail, his physical injuries and distress were obvious, yet Trooper Wolting, Trooper Arnold, Sheriff Ploutz, Deputy Chamberlain, Deputy Doe 3, and Deputy Doe 4, all with deliberate indifference, refused to take him to the hospital or give him any meaningful treatment, including a sip of water. Plaintiff claims that his severe pain went untreated during his interrogation, which was more than two hours long. (4-A-B).

The state charged plaintiff with battery of a law enforcement officer (LEO) in violation of Kan. Stat. Ann. § 21-5413 on October 23, 2013. Plaintiff remained at ECJ while that charge was

---

[2] Plaintiff provided no facts regarding the circumstances that led to his stop and arrest. Plaintiff's recitation of the facts began with the physical attack against him. The court notes that plaintiff did not allege the arrest was unlawful.

pending. On November 20, 2013, plaintiff pled guilty to said charge. Plaintiff filed a motion to withdraw his plea and a notice of appeal on November 26, 2013. The clerk's office docketed the notice, but failed to forward it to the chief district judge for assignment. ECJ remanded custody of plaintiff to the State of Texas on December 2, 2013 due to a detainer. The chief district judge became aware of the notice of appeal sometime after October 24, 2014, and ordered the County Attorney to clarify all that had transpired in the case. On January 7, 2015, the state district court informed the prosecution that if the prosecution failed to arrange for the return of Mr. Counce from Texas custody to stand trial within 180 days, then the matter would be dismissed with prejudice. *Id.* at 4. On September 24, 2015, the state court dismissed the criminal case with prejudice. The county attorney has appealed that dismissal, arguing that plaintiff bore the burden under the Interstate Agreement on Detainers to initiate his return to Kansas for a trial de novo. That appeal appears to be pending.

During his 40-day incarceration at ECJ, plaintiff claims that he was never provided with proper medical treatment because Sheriff Ploutz either rebuffed or ignored his requests for non-over-the-counter pain medication and treatment at a hospital.

On October 29, 2013, Sheriff Ploutz told plaintiff that he had turned over plaintiff's cash to the KHP on Friday, October 25, 2013. Plaintiff alleges that Sheriff Ploutz and Trooper Wolting had intended to steal his money, but Sheriff Ploutz became nervous and confessed that he gave it to Trooper Wolting, without a court order or a receipt.

After his arrest, plaintiff wrote several letters to Darian P. Dernovish, KHP's legal counsel, and Kirk E. Simone, KHP's Asset Forfeiture Coordinator, to request the return of his money and minivan. He claimed that they ignored his complaints and never returned his cash. (Dkt. 46 at 38). Plaintiff alleged that their requirement that he fill out IRS Form W-9 request was

3

unreasonable (because he could not recall his tax identification number) and tantamount to covering up the theft of his money. (Dkt. 48 at 2-O). In a letter dated September 11, 2014, Simone advised plaintiff that because the social security number listed on his Form W-9 was not recognized as belonging to him, and pursuant to Kan. Stat. Ann. § 22-2512, the money was transferred in plaintiff's name to the Unclaimed Property Division of the State of Kansas. Plaintiff claimed that $ 8,400 was turned over to the state treasurer's office and that KHP still owed him $ 520. (Dkt. 46 at 38).

## II.     Analysis

### A.   Motion to Dismiss

KHP Defendants contend that Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) require dismissal of plaintiff's claims against them. They invoke Rule 12(b)(1), contending the court lacks subject matter jurisdiction to hear plaintiff's claims against them in their official capacities ("official-capacity claims"). They invoke Rule 12(b)(5), contending plaintiff did not properly serve process on them. They invoke Rule 12(b)(6), contending plaintiff failed to state a claim against them in their individual capacities ("individual-capacity claims"). The court considers each argument below.

#### 1.  Rule 12(b)(1) and Official-Capacity Claims

KHP Defendants argue that asserting claims against them in their official capacities is a runaround way of suing KHP, which Kansas law and the Eleventh Amendment bars. Dkt. 100 at 7. The court agrees. State officials acting in their official capacities are immune from suit under § 1983. When a suit is brought against state officials in their official capacities, the real party in interest is the state entity. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official

capacities are 'persons' under § 1983."). The Eleventh Amendment bars actions against a state in federal court, even by its own citizens, unless the state waives that immunity. U.S. Const. amend. XI; *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). Because Kansas has not waived immunity and plaintiff does not seek prospective relief capable of supporting an exception to defendants' Eleventh Amendment immunity, the court dismisses plaintiff's official-capacity claims.

### 2. Rule 12(b)(5) and Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); Fed. R. Civ. P. 4 (service of process rule). Defendant argues that the court lacks personal jurisdiction over KHP Defendants because: 1) the Kansas Attorney General was not served with process as required for claims against state actors in their official capacity; 2) each KHP defendant was not served at his individual dwelling as required for individual-capacity claims; and 3) an earlier dated Complaint with every other page missing was served with the summons, rather than the Final Amended Complaint. Dkt. 100 at 5-6. The court disagrees. The court's decision to dismiss the official-capacities claims renders the failure to serve the Kansas Attorney General moot. The latter two shortcomings in service do not warrant dismissal of plaintiff's claims.

By virtue of Rule 4(c)(3) and 28 U.S.C. § 1915(d), a party proceeding *in forma pauperis*, as is the case here, is entitled to rely on the United States Marshal and officers of the court for service of the summons and complaint. If the necessary information has been provided, the plaintiff will not be penalized with dismissal of the case when service fails because the Marshal or clerk's office does not perform the duties specified by rule and statute. *See, e.g., Lee v.*

*Armontrout*, 991 F.2d 487, 489 (8th Cir.), *cert. denied*, 114 S.Ct. 209 (1993); *Puett v. Blandford*, 912 F.2d 270, 273-75 (9th Cir.1990). Consequently, even if these arguments have merit, KHP Defendants are not entitled to the requested dismissal. These arguments present, at most, an opportunity to correct a mistake for which the plaintiff is not accountable.

Under these circumstances, the court simply will order KHP Defendants' counsel to provide the court with each individual KHP defendant's residential address and then instruct the clerk's office and U.S. Marshal to correct the defects in service upon receipt of said addresses. Alternatively, KHP Defendants may waive this argument and agree to waiver of service of summons pursuant to Rule 4(d).

### 3.   Rule 12(b)(6) and the Individual-Capacity Claims

KHP Defendants argue that plaintiff did not assert individual-capacity claims against them as evidenced by his failure to personally serve them at their dwelling. The court rejects this argument because plaintiff relied upon court officers for service of process. By asking for compensatory and/or punitive damages against certain named defendants, "each and individually," plaintiff has asserted individual-capacity claims against KHP Defendants. Dkt. 48, Final Amended Complaint at 59.

KHP Defendants contend that plaintiff's individual-capacity claims are subject to dismissal under Rule 12(b)(6) for various reasons: 1) they are entitled to qualified immunity on both the excessive force and denial of medical care claims; 2) the claim for damages for unlawful seizure of plaintiff's cash is barred by the availability of an adequate remedy under state law; 3) plaintiff lacks standing to assert an interest in the seized vehicle; 4) plaintiff's conspiracy claim fails to allege facts showing an agreement and concerted action among the defendants; 5) plaintiff pled no facts showing any retaliatory conduct that would support his First

Amendment claim; and 6) the excessive force against Troopers Wolting and Arnold are barred by the statute of limitations.

### a) Excessive Force Claim (Counts I, II, and VII)

#### (i)    Statute of Limitations

The court rejects KHP Defendants' statute of limitations argument because it advocates applying a state statute to determine when a federal action commenced. "[When the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been "commenced" in compliance with Rule 3 [of the Federal Rules of Civil Procedure] within the borrowed period." *West v. Conrail*, 481 U.S. 35, 39 (1987); *Green v. McKeen*, Case No. 12-3158-RDR, 2013 WL 1309002, at *2 (D. Kan. Mar. 29, 2013) (collecting cases). Rule 3 states "[a] civil action is commenced by filing a complaint with the court." *Contra* Kan. Stat. Ann. § 60-203 (action is commenced upon the date of filing unless service is not made within 90 days of the filing date or 120 days if the court grants an extension of time to make service upon a showing of good cause ). Section 1983 actions in Kansas must be filed within two years of when the act giving rise to the cause of action first causes substantial injury. Kan. Stat. Ann. § 60-513(a)(4) and (b). Here, plaintiff filed a complaint with this court on November 12, 2013, which was within two years of the date of the alleged events in the complaint (October 23, 2013). Thus, this case is timely.

#### (ii)    Qualified Immunity and Excessive Force

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is applicable only if the official's conduct did not violate clearly

established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir.2005). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (*citing Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011)).

The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio*, 392 U.S. 1, 22-27 (1968). "Excessive force claims are governed by the Fourth Amendment's 'objective reasonableness' standard." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). Were the officers' actions "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation? *See Graham v. Connor*, 490 U.S. 386, 397 (1989). In resolving an excessive force question in the context of qualified immunity on a motion to dismiss, courts consider and balance three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (citing *Graham,* 490 U.S. at 396).

KHP Defendants claim that under the circumstances as described in the Final Amended Complaint ("FAC"), their actions were objectively reasonable. The court disagrees. Even though plaintiff did not describe the circumstances leading up to the altercation, accepting as true all well-pleaded facts and viewing all reasonable inferences in plaintiff's favor, the court cannot say on this record that plaintiff was an immediate threat to the safety of the officers or others and that

he was actively resisting arrest or attempting to flee. Plaintiff alleged that Wolting had performed a pat-down search for weapons and found none, that Wolting assaulted him for "15 to 25 minutes or more," and that plaintiff "couldn't offer any kind of resistance" during Wolting's attack on his shoulders and knees. Dkt. 48 at 3-A. Although the development of the facts of this arrest may reveal otherwise, for purposes of the motion to dismiss, the court concludes that plaintiff has pleaded enough facts to plausibly suggest that the amount of force used by defendants was not objectively reasonable. With the current record, the court cannot conclude that defendants are entitled to qualified immunity. Dismissal of the excessive force claims is therefore not proper at this time.

### b) Denial of Medical Care (Counts II, III, IV, and XII)

Likewise, the court cannot conclude on this record that KHP Defendants are entitled to qualified immunity as to plaintiff's denial of medical care claims. KHP Defendants argue that self-diagnosed injuries are insufficient to prove deliberate indifference to serious medical needs. Dkt. 100 at 12. The FAC, however, contains references to diagnoses by Drs. Fernando Cesani, Matthew Ditzler, and Glenn Garcia. Dkt. 48, FAC at 2, 2-E. The FAC also references an expert orthodontist from the Texas University Medical Branch and x-rays that show a broken jaw. *Id.* at 2-K, 4-D. Dismissal of the denial of medical care claims is therefore not proper at this time.

### c) Wrongful Deprivation of Personal Property (Counts XII, XIII, and XVII)

Count XII is a wrongful deprivation of property claim against Trooper Wolting; Count XIII is a wrongful deprivation of property against Sheriff Ploutz; and Count XVII is a wrongful deprivation of property against Dernovish and Simone. Because the facts in Count XII and XIII are interrelated, the court includes Count XIII in this analysis even though it is a claim against Sheriff Ploutz, who has not filed a motion to dismiss.

9

KHP Defendants seek dismissal of Counts XII and XVII on three grounds: 1) an adequate post-deprivation remedy under state law was available, thus these claims are barred; 2) plaintiff has failed to allege facts that he owned the seized vehicle; and 3) plaintiff failed to allege specific facts showing an agreement and concerted action among the defendants. Dkt. 100 at 13-15. Plaintiff insists that he never received a hearing or notification regarding the confiscation of his money, nor given a chance to object to the seizure. Dkt. 115-1 at 10. Plaintiff's response misses the point.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). When a plaintiff alleges deprivation of a property interest occurring as a result of the negligent or the unauthorized, intentional acts of a state employee, the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981). In other words, a meaningful hearing before the deprivation takes place is not required. The Supreme Court explained why as follows:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.* . . . [W]here an individual has been negligently deprived of property by a state employee, the state's action is not complete unless or until the state fails to provide an adequate postdeprivation remedy for the property loss.

*Parratt*, 451 U.S. at 541-42.

Here, plaintiff's cash and minivan were seized incident to his arrest. Plaintiff knew of this seizure. He principally takes issue with Sheriff Ploutz turning over the money to Trooper Wolting within a few days of the arrest. He alleges that Wolting and Ploutz conspired to steal

plaintiff's cash (Dkt. 48, FAC at 4-X). Kan. Stat. Ann. § 22-2512 provides that property seized shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate. As the arresting officer, Trooper Wolting was responsible for keeping the cash safe. And while Trooper Wolting allegedly failed to leave a receipt for plaintiff, he apparently submitted the cash to the KHP asset coordinator, Kirk Simone, who later turned it over to the Kansas Treasurer's Office. *Id.* at 4-Z; Kan. Stat. Ann. § 22-2512(c)(3) (unclaimed property shall be paid to the state treasurer). Upon plaintiff's request for the return of his money, Simone sent plaintiff paperwork to fill out. Dkt. 48, FAC at 4-W. Plaintiff, however, did not provide KHP with his social security number, so defendants did not return the money to him. Plaintiff blames his failure to provide his social security number on defendants' seizure of his minivan, which contained all of his personal effects, including his social security card. Plaintiff would have the court infer that requiring him to provide his social security number without access to his card was unreasonable. That inference is not plausible.

Moreover, the court agrees with defendants that: 1) plaintiff's allegations of conspiracy and lack of procedures are conclusory, and 2) plaintiff failed to allege facts that he was the registered owner of the minivan. To establish a conspiracy claim under § 1983, a plaintiff must allege "specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). The allegations must evidence a "specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Gallagher*, 49 F.3d at 1455. Plaintiff states that defendants Dernovish and Simone had a meeting of the minds to deny him his cash and mini-van. Dkt. 48, FAC at 4-W. However, this is a conclusory statement and plaintiff does not allege any specific facts that support it.

Because the state of Kansas provided an adequate post-deprivation remedy via Kan. Stat. Ann. § 22-2512, the court finds plaintiff's wrongful deprivation of property claims barred by *Hudson* and *Parratt*. Accordingly, the court dismisses Counts XII, XIII, and XVII.

### d) First Amendment Claim (Count XV)

Count XV alleges that defendants Bruce and Sauer violated plaintiff's rights to file a complaint against defendants Wolting and Arnold by refusing to send plaintiff the requested form complaints and instead, sent plaintiff a letter that threatened him with an obstruction charge. Defendants urge dismissal of this claim because plaintiff failed to plead violation of a clearly established right under the First Amendment. Dkt. 100 at 16. Plaintiff filed this suit against defendants Wolting and Arnold; thus, the court finds plaintiff has failed to state a claim against defendants Bruce and Sauer. The court dismisses Count XV.

### B. Motion to Furnish Trooper Arnold's First and Middle Name (Dkt. 116)

Defendants filed no response to this motion. Accordingly, the court grants it as uncontested.

### C. Motion to File Supplemental Citation (Dkt. 120)

In this motion, plaintiff seeks leave to file supplemental citations in support of his opposition to the motion to dismiss. He urges the court to consider the United States Supreme Court decision *Luis v. United States*, 136 S.Ct. 1083 (March 30, 2016) in determining whether defendants deprived him of his money and minivan without due process of law. Dkt. 120. *Luis* was decided approximately six months before plaintiff filed his response on October 3, 2016 (Dkt 115), thus it is not supplemental authority. And even if the court considered *Luis* as supplemental authority, it does not provide a basis for concluding that Counts XII, XIII, and XVII state a plausible claim for deprivation of property under § 1983. In *Luis*, the federal

government obtained a court order freezing assets belonging to defendant and that was untainted by the crime pursuant to 18 U.S.C. § 1345. Because *Luis* did not involve the loss of property by unauthorized acts of state employees, *Luis* does not apply to this case. The court therefore denies the motion as moot.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss (Dkt. 99) is **GRANTED IN PART** and **DENIED IN PART.** Counts XII, XIII, XV, and XVII are dismissed. Defendants Eric Sauer, Mark Bruce, Kirk Simone, and Darian Dernovish are dismissed from this case. All that remains, then, are plaintiff's individual-capacity claims for excessive force and denial of medical care.

**IT IS FURTHER ORDERED** that plaintiff's motion for defendants to furnish Trooper Arnold's first and middle name (Dkt. 116) is **GRANTED** and that plaintiff's motion to file supplemental citation (Dkt. 120) is **DENIED** as moot. Counsel for KHP defendant shall file a report furnishing Trooper Arnold's first and middle name and his residential address, as well as Trooper Wolting's residential address to the court *in camera*. Alternatively, KHP Defendants may file waivers of service of summons pursuant to Rule 4(d).

**IT IS FURTHER ORDERED** that the clerk's office refer this matter to a magistrate to handle discovery and pretrial matters. Plaintiff shall not file any discovery requests until after the parties have a discovery conference with the magistrate judge.

**IT IS SO ORDERED** this 17th day of February, 2017.

s/   J. Thomas Marten
Chief United States District Judge